JOHN GAY et al., Appellants, *v.* WILLIAM H. SEIBOLD, Impleaded, etc., Respondent.

The intention of the act of 1833 (Chap. 281, Laws of 1833), prohibiting the transaction of business in the name of a partner not interested, and requiring the designation "and Company," or " & Co.," when used to represent an actual partner, was to protect persons giving credit on the faith of the fictitious designation, not to protect those obtaining credit from such a firm.

To constitute a violation of the act, such designation must be used in the transaction of some business, and although a firm may be doing business, generally, in violation of the statute, a violation thereof may not be predicated of any transaction in which the false designation was not used.

Where, therefore, in a bond given to a firm, which used the " & Co.," although the same represented no actual partner, to secure a credit given by the firm, names of the actual partners were stated, also that they alone constituted the firm, and this was known to all the obligors,— *Held*, that the case was not within the purpose or intent of the statute, and that the use of the fictitious designation was not a defense to an action upon the bond.

(Submitted October 16, 1884; decided December 2, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made October 11, 1882, which affirmed a judgment in favor of defendants, entered upon an order, nonsuiting plaintiffs on trial.

This action was brought upon a bond given by defendant John S. Seibold as principal, and the other defendants as his sureties.

The nature of the bond and the material facts are stated in the opinion.

*Joseph P. Carr* for appellants. Plaintiffs' business being the publishing and selling of books, the contract and bond in suit were not based upon any act in violation of law. (Story's Conflict of Law, 248; *Armstrong* v. *Toler*, 11 Wheat. 258; *McBlair* v. *Gibbs*, 17 How. 232; *Miltenberger* v. *Cooke*, 18 Wall. 421.) In this case the fact that plaintiffs were transacting the business of publishing and selling books as partners under an illegal name has no necessary connection with their cause of action. (*Gregg* v. *Wyman*, 4 Cush. 422; Chitty on Contracts, § 621; *Smith* v. *Barstow*, 2 Dougl. 155; *Callahan* v. *Hallett*, 1 Caines, 104.) To enable this statute to be pleaded as a defense in an action, the case must fall not only within the mischief intended to be remedied, but within the terms of the act fairly interpreted, and in construing the act, the purpose for which it was passed, and the mischief it was designed to suppress, must be considered. (*Woods* v. *Erie R. Co.*, 72 N. Y. 196; *Bull's Head Bk.* v. *McFeeters*, 41 N. Y. Supr. Ct. [9 J. & S.] 218; *Swords* v. *Owens*, 43 How. Pr. 196; *S. C.*, 34 N. Y. Supr. Ct. [2 J. & S.] 227.)

*Wm. L. Jones* for respondent. Where the statute imposes a penalty with the view of protecting the public health or morals, or to prevent fraud, then it implies a prohibition, and a contract made in violation of it is void, *ex turpis causa*. (*Law* v. *Hodgson*, 2 Camp. 147; *Tyson* v. *Thomas*, McClel. & Y. 119; *Wheeler* v. *Russell*, 17 Mass. 258; *Cope* v. *Rowland*, 2 M. & W. 149; *Little* v. *Poole*, 9 B. & C. 192; *Houston* v. *Mills*, 1 Moody & R. 325; *Hunt* v. *Knickerbocker*, 5 Johns. 327; *Graves* v. *Delaplaine*, 14 id. 146.) As plaintiffs were carrying on their business in an illegal manner, and made the contract in question and bond in suit in violation of the law it is void. (*Holmes* v. *Johnson*, Cowp. 343; *Belding* v. *Pitkin*, 2 Caines, 149; *Wood* v. *Erie R. Co.*, 72 N. Y. 196; *Swords* v. *Owen*, 43 How. 176; *Barton* v. *Post J. P.R. Co.*, 17 Barb. 397; *Griffith* v. *Wells*, 3 Denio, 226; *Seneca Co. Bank* v. *Lamb*, 26 Barb. 595; Story on Contracts, § 613.)

EARL, J. On the 9th day of November, 1880, the plaintiffs, book publishers of the city of New York, entered into a written agreement under the name of Gay Brothers & Co. with the defendant John S. Seibold, whereby he, for certain considerations to be paid to him, agreed to act as clerk and manager of their branch office in the city of Buffalo for the sale of their publications which they were from time to time to consign to him. He was to keep accounts of his stock and of receipts and disbursements of money, and make remittances from time to time of balances, after deducting his commissions, to the plaintiffs. He was to canvass personally for the sale of books each afternoon, and devote the morning of each day to office work until such time as the office work should require his entire time and attention; and he was expected to employ other canvassers to aid him in his work. In the agreement the plaintiffs were described as Gay Brothers & Co., and in that name they executed it.

On the same day John S. Seibold, the respondent, William H. Seibold and Adele Seibold executed and delivered to "John Gay and Charles Gay, Jr., doing business as Gay Brothers & Co. in the city of New York," their bond, conditioned to be void if John S. Seibold should well and truly pay to "Gay Brothers & Co." all sums due from him, under the agreement, in the manner and at the times prescribed.

Thereafter, in pursuance of the agreement, the plaintiffs intrusted John S. Seibold with their books and publications, and he disposed of the same and received money on account thereof which he failed to account for and pay to them, and this action was commenced to enforce the obligations of his bond. William H. Seibold in his answer, among other things, alleged as a defense that the plaintiffs "were and are carrying on business in violation of law in this, to-wit: that said plaintiffs were and are carrying on business in the name of Gay Brothers & Co., with the designation of "and Company" or "& Co.," and said pretended bond is so made by said plaintiffs with said designation of "and Company" and "& Co.," to-wit: "Gay Brothers and Company" and "Gay Brothers & Co.," and the

said " & Co." represents no actual partner or partners in violation of the act of the legislature of the State of New York, entitled " An act to prevent persons from transacting business under fictitious names."

Upon the trial it was proved that the plaintiffs had for two years been carrying on business in the city of New York under the firm name of Gay Brothers & Co., and that they were the only members constituting the firm. At the close of the evidence the court nonsuited the plaintiffs upon the ground that they "having made the contract in suit, and having engaged in carrying on business under the firm name of ' Gay Brothers and Company,' while the words ' and Company' represented no actual person who was a member of said firm at the time of the making of the contract out of which the cause of action here arose, were violating thereby the statute" above referred to, and could not for that reason recover in this action. The sole question for our determination is whether the nonsuit should have been granted upon the ground stated.

There was no allegation in the answer, or proof upon the trial, that the plaintiffs' business in Buffalo was carried on by John S. Seibold in violation of the statute, or that he was required so to carry it on, or that the contract was entered into and the bond made to aid the plaintiffs in violating the statute. The plaintiffs were nonsuited simply because they were carrying on business in the city of New York under the name of Gay Brothers & Co., and entered into the contract with John S. Seibold in that name, and were described in the condition of the bond under that name.

The statute referred to is the act chapter 281 of the Laws of 1833, and reads as follows : Section 1. " No person shall hereafter transact business in the name of a partner not interested in his firm, and where the designation 'and Company' or ' & Co.' is used, it shall represent an actual partner or partners." Section 2. " Any person offending against the provision of this act shall, upon conviction thereof, be deemed guilty of a misdemeanor and be punished by a fine not exceeding $1,000."

This statute does not appear to be a very useful one. It does not compel partners to disclose their true names, or any of their names, in the partnership designation. They may still do business under any style, not untruly containing the name of any person, which they choose to assume, such as the " Union Towing Company," the " Eureka Company " or other fanciful names (*Crawford* v. *Collins*, 45 Barb. 269 ; *Wright* v. *Hooker*, 10 N. Y. 51) ; and it may be very difficult in such cases to ascertain who the numerous persons are composing the partnership. Even an individual may transact his business under such a name without violating the statute. So these plaintiffs could have done business under the name of " Gay & Co.," and the public would have been just as liable to imposition as when the business was done under the name of Gay Brothers & Co. Persons giving credit to a firm, either rely upon the responsibility of the firm by whomsoever it may be constituted, or they rely upon the members thereof whose names by inquiry, or in some other way, become known to them. Without this statute, one imposed upon by a fictitious firm would have his civil remedy for the fraud or deceit, and there would generally also be a remedy by indictment for false pretenses. So the statute is not only not very beneficial, but it is also highly penal and it should, therefore, be strictly construed.

To violate this statute, the designation " and Company " or " & Co." must be used in the transaction of some business. The purpose of the statute was obviously to protect persons giving credit to the fictitious firm on the faith of the fictitious designation. It could have had no other purpose. It was not needed to protect those who obtained credit from such a firm.

Although one may be doing business generally in violation of this statute, a violation thereof may not be predicated of any transaction in which the false designation is not used, and an indictment under the statute cannot be based upon such a transaction.

Here John S. Seibold, when he signed this contract, and this appellant when he executed the bond, knew that these plaint-

iffs alone constituted the firm. It was so stated in the bond, and the bond run to them in their true names. This business was in fact consciously done with them in their real names and not under any false designation, and hence it may be well said that the statute was not even in form violated. But no credit was given to and no reliance placed upon the false designation, and in fact no credit whatever was given to the plaintiffs. The object of this bond was to secure the plaintiffs for a credit given by them to John S. Seibold. Besides, here all the parties to this transaction knew who the real partners were. No one was deceived, and there was no possibility that any of the parties to the bond could be imposed on or harmed by the false designation. To indict and punish the plaintiffs for a crime in such a case would be most absurd and would shock the common sense, and the sense of justice of every right-thinking person. This case is not, therefore, within the purpose or intention of the statute, and such a transaction is not one of the mischiefs sought to be remedied by the statute. Therefore, although this transaction should be held to be within the letter of the statute, it is clearly not within the purpose and intention of the statute, and hence it is outside of the statute. It is a rule peculiarly applicable to the construction of penal statutes, that a thing within the letter of a statute is not within the statute, unless within the intention thereof; and so too in the construction of remedial statutes, it is generally held that a thing within the intention is within the statute though not within the letter; and these rules have many illustrations in the books. (*People* v. *Utica Ins. Co.*, 15 Johns. 358, 380; *Holmes* v. *Carley*, 31 N. Y. 289.) It is said in an old case (*Eyston* v. *Studd*, 2 Plowden, 465), " it is not the words of the law, but the internal sense of it that makes the law, and our law, like all others, consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law, *quia ratio legis est anima legis.*"

Applying this rule, therefore, in the construction of this statute, we are of opinion that, upon the facts appearing in this record, this transaction was not within the statute, and upon

this ground the judgments of the General and Trial Terms should be reversed and a new trial granted, costs to abide event.

All concur, Ruger, Ch. J., in result.

Judgment reversed.