The plaintiff seeks to recover of the defendant damages for injuries received on the 29th day of November, 1896, while crossing the tracks of the latter at University avenue, in the city of Rochester. The avenue at that point crosses some fifteen tracks of the defendant at an angle.
At about three o'clock in the afternoon of the day in question the plaintiff and his friend, Johnson French, sought to cross the tracks of the defendant on University avenue, approaching the same from the north. After crossing a number of dead and switch tracks, the plaintiff, in advance of his friend, who had lagged behind for some reason, crossed a track known as number one and stepped into a space of seven feet and two inches between it and the track immediately south; his progress was at that point arrested by a shifting train backing west on the last-named track.
It appears that both the plaintiff and French observed, when nearing these tracks from the north, that there was a freight train facing east and standing some hundred and eighty feet to the west of University avenue on track number one, engaged in taking coal for the engine.
French testified that when he started along somewhat rapidly to overtake the plaintiff, the latter was standing in the position already described, and the freight train on track number one had started up and was running rapidly towards the east.
French further stated that his object was to induce the plaintiff to recross track number one toward the north until the shifting train on the track south of it had passed; that as he approached track number one he called out to the plaintiff, who did not hear him, and he then hurried over to his side, in front of the approaching freight train and stood with him between the moving trains; that the freight train going east on track number one was running at least fifteen miles an hour. He further testified as follows: "While I was standing there, something hit me on the shoulder and jostled me around, and, of course, I looked at it at once and saw it hit Mr. St. John; being a taller man than I was, it struck him square on the shoulder; it was a projecting stick of some kind, *Page 244 
projecting from one of the cars that was backing up; it was an open car with a side, I think, about that high (illustrating); such a car as is used for coal and lumber. * * * After the stick struck Mr. St. John it drove him into the running train, and he struck his head against the side of a car loaded with hogs. Those cars are built up with slat work on the inside and square posts on the outside, so as to give air to the cattle. He struck against one of those posts on the car, I should judge; then he fell to the ground. * * * I started right after him, and as he crawled he turned to go under this running train; I grabbed him; that is, he crawled towards the cattle train going east."
This witness and the plaintiff further testified, under cross-examination, that they did not hear any whistle or bell from the rapidly approaching freight train, although when seeking to rejoin the plaintiff from the north, as already described, French observed that the freight train was leaving the coaling station on the west, but the plaintiff's attention was evidently fixed upon the shifting train backing west immediately in front of him on the track south of number one.
French stated in his direct examination that the stick which projected from the car of the train that was backing up appeared to be about three and one-half to four inches wide, and that it projected from eighteen to twenty inches from the car. It was proved that cars project over the rail from eighteen to twenty-two inches.
Assuming the projection of the cars to have been eighteen inches, the plaintiff was standing in a clear space of only four feet two inches, when both trains were passing, and if it was encroached upon by a piece of timber projecting over eighteen or twenty inches from the car, it is obvious that plaintiff's position was one of extreme peril.
The witness French, being shorter than the plaintiff and standing east of him, encountered the timber first, which just grazed his shoulder, while the plaintiff, receiving the full force of the blow, was knocked against the rapidly moving freight train and would have crawled under it, as he was *Page 245 
evidently dazed, if his friend had not prevented him by main force from so doing.
It appears that the flagman usually on duty on the north side of this crossing was absent on this occasion, or at least was not observed at his post.
The plaintiff was removed to the hospital and the surgeon in charge testified that his skull was fractured and that some loose bones were taken out and other pieces elevated into their proper position; that the nose had been broken and some pieces of that had to come out, especially at the upper part.
The plaintiff testified in substance that he was a well man before this injury, but that he has been an invalid ever since, suffering from pains in the head and grave disturbances of the nervous system.
At the close of the plaintiff's case, the defendant's counsel moved for a nonsuit on three grounds: That the plaintiff had failed to make out any cause of action; that the plaintiff had failed to prove any negligence on the part of the defendant causing or contributing to the accident; that the plaintiff had failed to show himself free from contributory negligence, but, on the contrary, upon the evidence in the case, he had shown gross contributory negligence. The motion was granted and the plaintiff duly excepted.
The trial judge ordered that the exceptions taken by the plaintiff be heard in the first instance by the Appellate Division. The latter court overruled the exceptions and denied a motion for a new trial with a divided court, two justices dissenting.
The learned counsel for the plaintiff insists that the question of negligence on the part of the defendant should have been submitted to the jury, and that there were four distinct acts on the part of the defendant which contributed to the plaintiff's injury: (1) It was negligence on the part of the defendant to start the train upon track number one without proper warning by whistle or bell, advising the plaintiff of the approach of that train, his attention being absorbed by the noise of the train passing immediately in front of him on *Page 246 
the track south of number one. (2) If the place where the plaintiff stood was unsafe, it was negligence on the part of the engineer on track number one to start, while the train on the track next south was moving over the crossing. (3) That it was a question of fact for the jury whether the place occupied by the plaintiff, under all ordinary circumstances, was or was not a dangerous position. (4) As the evidence now stands, it is clear that the train on track number one was moving at a dangerous rate of speed, in view of the condition of the crossing at University avenue at the time of the accident.
It is also urged on behalf of plaintiff that it was a question of fact for the jury whether the plaintiff was free from contributory negligence.
It appears that this crossing was some three hundred and fifty feet in length, and that the flagman, whose duty it was to caution pedestrians as to the movement of trains, was not at his post of duty.
It was a question for the jury whether the place where the plaintiff was standing was a reasonably safe one under the circumstances if the trains had been passing each other in a normal condition.
As the evidence now stands, the injury to the plaintiff was directly due to the projecting timber from the shifting train on the track south of number one.
The plaintiff having been nonsuited, is entitled to the benefit of every fact that the jury could have found from the evidence and to all the inferences warranted thereby. (McNally v. P.Ins. Co., 137 N.Y. 395; Stuber v. McEntee, 142 N.Y. 205;Costello v. T.A.R.R. Co., 161 N.Y. 320.)
The trial judge should have submitted to the jury the questions of the contributory negligence of the plaintiff and the negligence of the defendant.
The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.
PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.
Judgment reversed, etc. *Page 247