LEVY et al. v. TIMBLE et al.

(Supreme Court, Appellate Term. May 29, 1905.)

1. BROKERS—SALES—REAL ESTATE CONTRACTS—WRITTEN AUTHORITY—STATUTES.

Pen. Code, § 640d (Laws 1901, c. 128, p. 312), requiring written authority to authorize brokers to sell real estate for clients, does not apply to an employment of brokers to sell a contract for the sale of real estate at a higher price than that which the vendees had agreed to pay.

2. SAME—JUDGMENT ON MERITS.

Where, in an action for brokers' services, a judgment was rendered in favor of defendants at the close of plaintiffs' case, it could only be a judgment of nonsuit, as provided by Municipal Court Act (Laws 1902, p. 1561, c. 580) § 248; a judgment on the merits being only proper in a case where at the close of the whole case the court is of the opinion that plaintiff is not entitled to recover, as a matter of law, or where the court sustains a demurrer, etc., as provided by section 249.

3. SAME—PERFORMANCE OF SERVICES.

Where plaintiffs were employed as brokers to sell a contract for the sale of real estate at a profit of $1,000 net to their clients, and they produced a purchaser ready, able, and willing to take the contract on the terms prescribed, but defendants refused to assign the same, and sold it to another, plaintiffs performed their obligations, and were entitled to recover commissions.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, §§ 75, 79, 81, 94.]

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Herman Levy and others against Jacob Timble and others. From a Municipal Court judgment in favor of defendants, plaintiffs appeal. Reversed.

Argued before SCOTT, P. J., and TRUAX and DOWLING, JJ.

Louis Frankel, for appellants.

Edward A. Isaacs, for respondents.

DOWLING, J. The facts in this case are undisputed. The defendants had entered into a contract for the purchase of certain real estate situated in this city from one Schener. After the con-

tract was executed the defendants employed the plaintiffs, who were real estate brokers, to sell the contract, and agreed to pay plaintiffs all over the sum of $1,000 that plaintiffs were able to obtain above the price named in the contract. Subsequently the plaintiffs produced one Goldstein as a proposed purchaser of the contract, and a meeting between Goldstein, one of the plaintiffs, and the defendants was had, but the sale was not consummated. The next Saturday thereafter one of the plaintiffs informed the defendants that he had found a purchaser—one Fittashauer—and had sold him the contract for $1,000 net, and an appointment was made for a meeting of the parties at plaintiffs' office the next morning. The defendants failing to appear, one of the plaintiffs went to the defendants, and they agreed to meet the plaintiffs at 2 p. m. of that day. When the defendants came to plaintiffs' office, one of the plaintiffs being absent, it was arranged that all parties should meet the next morning (Monday). Fittashauer went to the plaintiffs' office at the time appointed, and, upon defendants being communicated with by telephone, they informed plaintiffs that the contract had been sold by them for more than Fittashauer had promised to pay. It appeared that Fittashauer had finally agreed to pay $44,000, as the purchase price of the premises, which was $1,500 more than defendants had contracted to pay Schener.

At the close of the plaintiffs' testimony the court, upon motion of defendants' attorney, rendered a judgment in favor of the defendants upon the ground that the plaintiffs, not having written authority to sell real estate, came within the inhibition of section 640d of the Penal Code (chapter 128, p. 312, Laws 1901), and were thereby precluded from recovering. This was error. That statute is penal in its nature, and must be strictly construed. Gay v. Seibold, 97 N. Y. 472, 49 Am. Rep. 533. No intent of the Legislature can be read into its provisions, and its language must be given such meaning only as is plainly and clearly expressed thereby. "Its provisions are aimed at irresponsible brokers who would constitute themselves agents by their own fiat, and then, whether successful or not, seek to fasten liability on the owners of property for commissions on abortive sales." Imperator v. Wasboe (April App. Term, 1905) 93 N. Y. Supp. 489. It refers to sales of real property only, and was not intended to cover every transaction having relation to real estate. Although the witnesses, in giving their testimony, in several instances speak of the transaction as being a sale of "the houses," the agreement between the parties herein is clearly shown to have been one for the sale of defendants' interest in the contract held by them, and not a sale of the real estate mentioned therein. Judgment, therefore, should not have been given for the defendants upon the merits, as judgment upon the merits can only be given in cases "where at the close of the whole case the court is of the opinion the plaintiff is not entitled to recover, as a matter of law," and "where the court sustains a demurrer," etc. Section 249, Municipal Court Act (Laws 1902, p. 1561, c. 580). The judgment can at most only be regarded as one

of nonsuit (section. 248, supra), and it remains to be seen whether the plaintiffs failed to make out a cause of action. In cases of a nonsuit, granted at the close of plaintiff's case, the testimony given must be taken in the light most favorable to the plaintiff, and all legitimate inferences in support of the plaintiff's contention may be drawn therefrom. St. John v. N. Y. Cent. & H. R. R. Co., 165 N. Y. 241, 246, 59 N. E. 3. Examined with this rule in mind, the plaintiffs' proof, uncontradicted, shows a right to recover. Fittashauer, the plaintiffs' proposed purchaser of the contract, testified that he was present at the time and place appointed, ready and willing to take over the contract and pay the agreed price. Although a refusal of the defendants to attend such meeting and transfer the contract to Fittashauer was said by them to be for the reason that they had already sold the same, there is no evidence that such sale was made prior to the time that they were notified by the plaintiffs of the sale of the contract by them to Fittashauer; and defendants' silence regarding any sale by them up to the time designated for the final meeting of the parties leads to the inference that the sale made by them was subsequent to such notification, and consequently at a time when the plaintiffs had apparently earned their commissions. That defendants recognized their liability, in some measure, at least, is supported by the testimony to the effect that defendants, on the Monday aforesaid, stated to the plaintiffs that they had "$2,000 profit on the houses, * * * and will take care of you, anyway."

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.

TRUAX, J., concurs.

SCOTT, P. J. (concurring). I concur with Mr. Justice DOWLING that the contract testified to by the plaintiffs may be construed as an employment to sell a contract for the purchase of real estate, and not to sell the real estate itself, and that it is for that reason not obnoxious to chapter 128, p. 312, Laws 1901. It follows that the judgment must be reversed, since the justice expressly based his judgment for defendants upon the ground that the statute referred to applied to the agreement between the parties. As there must be a new trial, it may not be amiss to point out some reasons why, under the present pleadings and evidence, it might be found difficult to sustain a judgment for the plaintiffs. The summons, oral complaint, and bill of particulars all lend color to the belief that plaintiffs supposed that they were employed to sell the real estate itself, and were entitled to full commission on the purchase price of the real estate. The evidence is to the effect that defendants, having obtained a contract for the sale to them of certain real estate, authorized plaintiffs to sell that contract, and fixed the sum of $1,000 as the price at which they were willing to sell. Assuming that this was the agreement, and that plaintiffs did procure a purchaser who was willing to pay $1,000 for defendants' contract (and it is only upon this assumption that plain-

tiffs can recover at all), the plaintiffs' commission should be calculated upon the price at which the defendants were to sell the contract, and not upon the price to be received by the original vendor in the contract with defendants. According to the plaintiffs' testimony, however, they were not to be compensated by the payment of a commission calculated upon a percentage basis, but were to receive all that they could realize upon the sale of the contract over $1,000. If they sold it for no more than $1,000, they would be entitled to receive nothing. By employing plaintiffs to sell the contract the defendants did not debar themselves from selling it themselves if opportunity offered. So long as plaintiffs did not produce a purchaser at $1,000 or over, the defendants had a perfect right to sell themselves or through another broker, without incurring liability to plaintiffs, providing timely notice was given them. The view of the testimony most favorable to plaintiffs is that they procured a purchaser who would give $1,500 for the contract, but that they advised defendants that the purchaser would pay $1,000 for it. It may be that they adopted this course because they considered that it made no difference to defendants how much the purchaser paid over $1,000, since all over that sum was to go to plaintiffs as compensation. In my opinion, however, the defendants were entitled to be informed of the exact facts as to the proposed purchase, if for no other reason, that they might know whether or not they could safely sell to another purchaser. They were entitled to rely upon what plaintiffs told them, and, being told that the proposed purchaser would pay $1,000 for the contract, they were justified in believing that they were doing no injury to plaintiffs by selling to another, because, at the offer as communicated to them by plaintiffs, there was no margin of profit for plaintiffs, and they would not, therefore, be damnified if they lost the sale. While, therefore, I concur in the reversal of the judgment, I do not desire to be understood as conceding that the plaintiffs established their right to the judgment demanded.