GODDARD v. AMERICAN PEROXIDE & CHEMICAL CO. et al.

(Supreme Court, Special Term, New York County. April 11, 1910.)

1. CORPORATIONS (§ 616*)—DISSOLUTION—SALE OF CORPORATE ASSETS—VALIDITY.

Where a corporation decided to sell its assets and dissolve, and a plaintiff purchased such assets and obtained a bill of sale signed by the company's vice president, whose action was ratified by the board of directors, and the company received the consideration for the transfer and made no effort to question the validity of the sale, strangers to the transaction cannot attack it.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 616.*]

2. CORPORATIONS (§ 49*)—CORPORATE NAME—TRANSFER.

Plaintiff purchased the assets and corporate name of a New Jersey corporation manufacturing and selling a brand of peroxide of hydrogen which had acquired a considerable reputation, after which the corporation was dissolved. In the meantime, plaintiff had commenced business in New York under the corporate name so purchased, and has continued to do so ever since. Defendant H., who had been previously connected with

the corporation, knew of plaintiff's purchase, and himself made efforts to buy, but, failing in this, soon after plaintiff's purchase, organized a New York corporation under the same name; the certificate of incorporation of the New York company being issued on the same day on which there was filed in that office a certificate of the dissolution of the New Jersey corporation. *Held,* that such corporate name was a valuable asset which was subject to transfer, and that plaintiff, by his purchase, acquired the exclusive right thereto and was entitled to enjoin defendant from using it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

3. CORPORATIONS (§ 49*)—USE OF NAME—INJUNCTION—STATUTES.

That plaintiff purchased the right to use the name of a corporation in connection with a corporation's assets, and thereafter innocently continued to conduct business in New York under such name, in violation of Pen. Code, § 363b (Penal Law [Consol. Laws, c. 40] § 440), prohibiting the use of business names without compliance with certain formalities, and providing that one failing to comply with its provisions shall be guilty of a misdemeanor, did not preclude plaintiff from restraining defendant's wrongful use of the name on the theory that plaintiff must come into equity with clean hands, where, as soon as plaintiff knew of such law, he filed the necessary certificate which was before the commencement of his action.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 49.*]

Suit for injunction by Charles H. Goddard, doing business as the American Peroxide & Chemical Company, and as trustee of the American Druggists' Syndicate, against the American Peroxide & Chemical Company and others. Decree for complainant.

See, also, 126 App. Div. 902, 110 N. Y. Supp. 1129.

Philbin, Beekman & Menken (S. Stanwood Menken and Morton G. Bogue, of counsel), for plaintiff.

Rand, Moffat & Webb (William Rand, Jr., and Langdon P. Marvin, of counsel), for defendants.

GIEGERICH, J. The plaintiff and the defendants each seek to restrain the other from using the name "American Peroxide & Chemical Company" and the word "American" to indicate a brand of goods sold. The plaintiff further seeks to have the defendants enjoined from selling and offering for sale such goods, namely, peroxide of hydrogen, in bottles and wrappers which he claims are similar in shape and color to those used by him.

In 1902 the defendant Hamlin and others organized in New Jersey a corporation called the "American Peroxide & Chemical Company." Hamlin was the active manager of this company, which manufactured and sold under its own name a brand of peroxide of hydrogen which acquired some reputation in the trade. In 1905 Hamlin severed his connection with the company. Shortly afterwards he organized the defendant Hydrox Chemical Company, which has been actively engaged since that time in the manufacture and sale of peroxide of hydrogen. After Hamlin's withdrawal, the business of the American Peroxide & Chemical Company diminished, until finally, about a year afterward,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it was decided to sell the assets and dissolve the corporation. The plaintiff purchased such assets and obtained a bill of sale signed by the company's vice president, Carroll, whose action was subsequently ratified by the board of directors. Furthermore, the company received the consideration for the transfer, amounting to $5,500, and has never made any effort to question the validity of the sale. Under such circumstances, the defendants, who were strangers to the transaction, cannot attack it. Although the stockholders had voted to dissolve the company, and all its property had been transferred on September 1, 1906, the dissolution was not completed until later in the month, namely, on September 24th, owing to the necessity of advertising the notices required by the New Jersey statute in such proceedings. Meanwhile, and on September 1st the plaintiff had commenced to do business in this state under the name of the "American Peroxide Chemical Company," and has so continued ever since. The defendant Hamlin had been aware of the negotiations which resulted in the purchase by the plaintiff, and had himself made efforts to become the buyer. Failing in this attempt, soon after the purchase by the plaintiff, Hamlin organized in this state the defendant company, the American Peroxide & Chemical Company. The certificate of incorporation of this New York company was issued by the Secretary of State on the 3d day of October, 1906, on which day there was filed in that office a certificate of the dissolution of the New Jersey corporation of the same date.

Upon all the facts in the case it is evident that Hamlin organized his company in this state for the purpose of obtaining the benefit of the reputation which the name "American Peroxide & Chemical Company" had obtained in the trade. He knew that the plaintiff was doing business under that name, and on October 4th, the day after his company was incorporated in New York, he wrote to the plaintiff that the latter had bought a "gold brick" in making the purchase he had. In the bill of sale made by the New Jersey company to the plaintiff it was expressly stated that among other things conveyed was the "sole right to the use of the name of the American Peroxide & Chemical Company." The right to use such name was a property right, and passed to the plaintiff as part of his purchase. Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251, 62 L. R. A. 81; Ottoman-Cahvey Co. v. Dane, 95 Ill. 203; Grand Lodge of A. O. U. W. v. Graham, 96 Iowa, 592, 65 N. W. 837, 31 L. R. A. 133; Lothrop Pub. Co. v. Lothrop, Lee & Shepard Co., 191 Mass. 353, 77 N. E. 841, 5 L. R. A. (N. S.) 1077. This principle is recognized by the decisions in this state also. In Cutter v. Gudebrod Brothers Co., 44 App. Div. 605, 610, 61 N. Y. Supp. 225, 229, the court stated that:

"Intangible rights of property as trade-marks and trade-names are recognized in the law as constituting property."

I am of the opinion, therefore, that, irrespective of any question of prior usage, the plaintiff acquired a property right to the name in question which he could enforce by preventing any competitor from using the same name. In this case, however, it is claimed that the plaintiff should not be allowed to enjoy the use of the trade-name he purchased, because he has carried on business under that name without filing the

certificate required by section 440 of the Penal Law (Consol. Laws, 1909, c. 40, formerly section 363b of the Penal Code). This proposition is based upon the general principle that a plaintiff must come into equity with clean hands. In the present instance, however, it was proved that the plaintiff for a long time had no knowledge of the statute referred to, and as soon as he became aware of its existence he filed the necessary certificate, which was prior to the commencement of the action. The statute referred to provides that one failing to comply with its provisions shall be guilty of a misdemeanor, but makes no provision beyond that and mentions no penalty. For the purposes of prosecution under the statute it may be that ignorance would be no defense, and so, likewise, if the rights of a creditor were involved; but no authority has been cited, and I see no reason why the plaintiff should be denied the relief he asks for and would otherwise be entitled to merely because he has innocently been in default under the statute.

My conclusion is that the plaintiff should have an injunction restraining the defendants from manufacturing and selling peroxide of hydrogen under the name "American Peroxide & Chemical Company," and also from using the word "American" to indicate a brand of peroxide of hydrogen. It is unnecessary to consider whether the word "American" is of such a broad and descriptive character that it is not susceptible of exclusive appropriation by any one, because of the fact in this case that both sides, by asserting a right to such exclusive use, have conceded that the word is susceptible of exclusive appropriation. So far as concerns the cartons covering the bottles in which the goods in question are sold, there is no similarity of appearance. So far as the bottles and the labels thereon are concerned, I think there is such a similarity that users may be deceived, and an injunction should issue restraining the further use of such bottles and labels.

The plaintiff is therefore entitled to judgment as prayed for in the complaint, and dismissing the counterclaim interposed by the defendants, with costs. The form of the decision and judgment to be entered hereon may be presented upon the usual notice of settlement.