JULIUS LEHRENKRAUSS and Others, Copartners, Doing Business under the Firm Name and Style of J. LEHRENKRAUSS & SONS, Respondents, v. UNIVERSAL TOURS, INC., Appellant.

Second Department, December 4, 1929.

*Leonard F. Manheim* [*Emanuel Newman* and *William Austin Moore* with him on the brief], for the appellant.

*Albert J. Clark*, for the respondents.

YOUNG, J. The trial court found as findings of fact that plaintiffs' predecessors had adopted the legend " Universal Tours " as a trade name in the travel agency business in the year 1915; that in the year 1924, plaintiffs' predecessors adopted the legend " Universal Lehrenkrauss Travel Agency " as a trade name; that in May, 1925, plaintiffs adopted the arbitrary legend " Universal Travel Agency " as a trade name in the travel business; that neither plaintiffs nor plaintiffs' predecessors had discontinued or

abandoned the use of said trade names; that the said trade names had acquired a secondary meaning; that the defendant company was engaged in a travel agency business in New York city under the name " Universal Tours, Inc.," and was incorporated after its predecessor in title had received actual notice of plaintiffs' claim of exclusive right to the trade name " Universal Tours " and that the use by the defendant of the legend " Universal Tours " as a part of its corporate name has caused confusion in the trade with the result that numerous concerns have extended credit to tourists bearing credentials issued by the defendant and have forwarded said credentials to plaintiffs for redemption in the mistaken belief that said credentials emanated from or were issued by plaintiffs.

The court found as conclusions of law that the legend " Universal Tours " is a good and valid trade name and is owned by the plaintiffs; that the defendant by the use of its corporate name is trespassing upon the rights of plaintiffs and is guilty of unfair competition and that plaintiffs are entitled to a perpetual injunction enjoining and restraining the defendant from the use of the words " Universal Tours " as a part of its corporate name.

Both plaintiffs and defendant conduct a travel agency business. Plaintiffs' business is conducted from its office, 359 Fulton street, Brooklyn. They have been continuously engaged in the business mentioned since 1878, and their business extends to all parts of the world and amounts to about a million dollars annually. Prior to the late World War, this business was conducted in the name of J. Lehrenkrauss & Sons, and the business conducted by them was for a large part German business. When the war began, plaintiffs found it advisable to adopt a trade name on account of the anti-German feeling in the United States, dropping their own German name theretofore used. Accordingly, in 1915, plaintiffs' predecessors adopted the words " Universal Tours " as a trade name for their business, and this name was applied to their stationery, checks, travelers' coupons, advertising literature and to an account in the Mechanics' Bank in Brooklyn in which deposits were made every few days throughout the entire period from 1915 to the date of trial, October, 1928. This trade name was also, in 1915, applied in raised brass letters to a copper plate fastened to the base of the window in front of plaintiffs' office in Brooklyn.

It was also shown that, while still using the words " Universal Tours " as a trade name, plaintiffs' predecessors, in May, 1917, also adopted the words " Universal Tour Company," which was also applied to their stationery, coupons, tickets and advertising, and evidence was offered that both these names were more or less used from the time of their adoption to the date of trial, although

it was contended by the appellant that they were very little in use for a number of years prior to the time when the defendant began using the same words in 1926. It was also shown that, on February 5, 1924, plaintiffs adopted the words " Universal Lehrenkrauss Travel Agency " as a trade name, and, in February, 1925, adopted the words " Universal Lehrenkrauss Travel Agency " as a trade name. It was also shown that certificates were duly filed in the county clerk's office in each of these four instances, at the date given above, in compliance with section 440 of the Penal Law. This section, prior to 1926, was as follows:

" § 440. Conducting business under assumed name. 1. No person or persons shall hereafter carry on or conduct or transact business in this State under any assumed name or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact or intend to conduct or transact such business, a certificate setting forth the name under which such business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the postoffice address or addresses of said person or persons, and the age of any who may be infants. Said certificate shall be executed and duly acknowledged by the person or if there be more than one, by all of the persons so conducting, or intending to conduct said business. * * *

" 5. Any person or persons carrying on, conducting or transacting business as aforsaid, who shall fail to comply with the provisions of this section shall be guilty of a misdemeanor."

It was also conceded that, in February, 1924, plaintiffs' predecessors filed certificates in the Kings county clerk's office, discontinuing the trade names " Universal Tours " and " Universal Tour Company." The form of this certificate of discontinuance was as follows, signed by the plaintiffs' predecessors: " We certify that we have discontinued and terminated the conduct and transaction of any business under the name Universal Tours [the other certificate reading Universal Tour Company], and hereby direct and authorize the Clerk of the County of Kings to cancel the certificate made and acknowledged by them [giving the date of the filing of the certificates as heretofore stated]."

Bearing in mind the date of these certificates of discontinuance, namely, February, 1924, I shall now refer to the acts of the defendant on account of which this action has been brought, and against the continuance of which it has been enjoined. It was shown that

one Jack Jacobs is president of the defendant corporation. He had conducted a tourist agency business with his father at No. 38 Canal street, Manhattan. His father had been in this business since 1888. In 1924 the son opened a branch office at 424 Seventh avenue, Manhattan, under the name "European Travel Service," this name having first been adopted by his father in 1890 and been duly registered in the county clerk's office in Manhattan. This continued until 1926, when, as Jack Jacobs testified, his business had grown and its character changed from an immigrant business to that of a general tourist agency, and he thought it advisable to get a new name more truly indicating the character of his business. He testified that he made a thorough search in the New York Public Library and of the records of the county clerk's office, and, as a result of his search, he adopted the name "Universal Tours" and filed a certificate to that effect in New York county on August 11, 1926, pursuant to section 440 of the Penal Law. He testified that, prior to November, 1926, he had never heard of Lehrenkraus & Sons. They did no business in Manhattan and he did not know of them. Later on, in November, 1927, he incorporated his business under its present name, "Universal Tours, Inc." Before using the name at all, he inquired at the county clerk's office in Kings county and found that this name was available, that it was not used by anybody else, and, before he incorporated, he received a letter from the Secretary of State, stating that he might use the name "Universal Tours, Inc." for his new corporation. The first knowledge he had that plaintiffs claimed the exclusive right to use the words "Universal Tours" was a letter he received from plaintiffs' representative on or about November 13, 1926. The defendant at this time had been using the words "Universal Tours" as a trade name approximately three months, and after this incorporated under this name. Of course, this was done with full knowledge of plaintiffs' claim to the exclusive use of these words. It was shown by Mr. Jacobs that, upon receipt of this letter, he consulted counsel and was advised that he could safely proceed; that he had a legal right to use the words "Universal Tours," and, later on, it is conceded that he had a talk with plaintiffs' representative in which he took the same position, and the defendant claims that plaintiffs had no faith at that time in their present claims, for it appears that while they knew that the defendant was using the words "Universal Tours" in its business as early as November, 1926, and wrote the defendant a letter threatening a lawsuit, they did nothing about it until January, 1928, when the present action was brought, during which time, the defendant contends, they tried to bolster up their case by again using the words

" Universal Tours " in their business, which it is claimed were not used in their business for some years prior to this time.

It is quite apparent that this appeal presents almost entirely a question of law. There is little dispute about material facts. In my judgment, the evidence is sufficient to uphold a judgment enjoining the defendant from the use of the words " Universal Tours " as a trade name, were it not for the fact that, in 1924, plaintiffs' predecessors filed a certificate stating that they had discontinued and terminated the use of these words in their business. This, in my judgment, presents a very serious situation for the plaintiffs in this action. Plaintiffs insist that, although these certificates of discontinuance were filed, they still continued to use the words " Universal Tours " in their business, that this use continued to the time of the trial, and much documentary evidence as well as testimony was offered to establish this fact; and they assert that this use on their part of these words after the certificate of discontinuance was filed gives them the right to protect such use of these words in their business, and that the judgment in their favor at Special Term was right; that it clearly appeared that the defendant, for the purpose of getting business from them unfairly, made use of the trade name which they had used for a long period and that a clear case of unfair competition was made out. The trouble about this argument is that the cases, so far as they touch upon the vital question involved, seem to be against plaintiffs' contentions. It is conceded that no case has been decided directly upon this point. The respondents cite a number of cases where actions at law, brought to collect debts, have been upheld, where the defendant alleged by way of defense a violation of the Penal Law on the part of the plaintiff, but the courts have held that, in such actions, this defense is not available, because it is said that, whether or not plaintiff's name in such actions was legally or illegally used, the contract sued upon was actually made and was no less an obligation because the obligee had used a name which he ought not to have used. (*Gay* v. *Seibold*, 97 N. Y. 472; *Wood* v. *Erie Railway Company*, 72 id. 196.) This rule, in my opinion, does not apply in an action brought in equity like the present one. In such a case fairness is always to be considered. So far as I know, there was no statute requiring the filing of the certificates of discontinuance, yet plaintiffs' precedessors did so and plainly announced that they had discontinued and terminated the conduct and transaction of their business under the name in question. Having done so, equity should not permit them now to assert a right upon the use of the name they had declared discontinued and terminated. This, of course, is without considering the effect of the alleged violation of section 440 of the Penal Law.

It is claimed that plaintiffs' use of the trade name in question after the filing of the certificate of discontinuance was in violation of section 440 of the Penal Law referred to, but it has been suggested that, as no statute required the filing of such certificate, it was merely a gesture without legal effect. It is certain, however, that it would be inequitable to grant plaintiffs relief based upon the certificate which they had caused to be canceled, and plaintiffs make no such demand.

If plaintiffs' use of the trade name subsequent to the filing of the certificate of discontinuance is to be regarded as an illegal use, and I think it should be, then it is plain that plaintiffs are not entitled to the relief sought. In this connection, both sides cite the case of *Goddard* v. *American Peroxide & Chemical Co.* (67 Misc. 279). That was a Special Term case in which Mr. Justice GIEGERICH wrote the opinion, and he held that plaintiff would be permitted to restrain the defendant's wrongful use of the trade name in question in spite of failure on plaintiff's part to file a certificate according to section 440 of the Penal Law, but because of special circumstances. He stated: " In this case, however, it is claimed that the plaintiff should not be allowed to enjoy the use of the trade name he purchased, because he has carried on business under that name without filing the certificate required by section 440 of the Penal Law (Consol. Laws, 1909), formerly Penal Code, § 363b. This proposition is based upon the general principle that a plaintiff must come into equity with clean hands. In the present instance, however, it was proved that the plaintiff for a long time had no knowledge of the statute referred to, and as soon as he became aware of its existence he filed the necessary certificate, which was prior to the commencement of the action."

In *Williams* v. *New York Herald Co.* (165 App. Div. 529) it was held that members of a dairy company maintaining a lawful business, but conducting it under a fictitious name in violation of the Penal Law, were not entitled to recover damages to their firm business in an action for libel.

In *Prince Manufacturing Co.* v. *Prince's Metallic Paint Co.* (135 N. Y. 24) Judge ANDREWS, writing for the Court of Appeals, said: " The jurisdiction of equity to restrain the infringement of trade-marks is founded upon the right of property in the plaintiff and its fraudulent invasion by another, and is exerted to prevent fraud upon him and upon the public. * * * In protecting the owner of the trade-mark the public is also protected and deception is prevented. But as was said by Lord ROMILLY in *Cocks* v. *Chandler* (L. R. [11 Eq.] 446): ' The administration of equity is founded on perfect truth.' The party who comes into a court of equity for relief against fraud must himself be free from fraud in the matter

of which he complains, or, as is frequently said, he must come with ' clean hands.' The courts have in many cases applied this principle in bar of relief in cases of trade-marks. Any material misrepresentation in a label or trade-mark as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity. The courts do not, in such cases, take into consideration the attitude of the defendant. Although the defendant's conduct is without justification, this, in the view of a court of equity, affords no reason for interference."

In 38 Cyc. 797, it is stated: " Illegality or fraud a bar to relief. If a trade or calling, as carried on, is illegal, deceptive, or fraudulent, names, marks, or devices used therein will not be protected upon the ground of unfair competition, no matter how plain defendant's fraud may be, and although a proper case for relief is made out in all other respects. The rule here is the same as in the case of technical trade-marks. Plaintiff must come into court with clean hands. Names and marks which are themselves a misrepresentation, or which are wrongfully used by plaintiff, and operate to deceive the public, will not be protected. The illegal use of a name in violation of law will not constitute it a trade-mark entitled to protection as such."

No case is cited involving a certificate of discontinuance such as appears in the present case, and no case is cited where an injunction has issued against a defendant where it appears that the plaintiff was seeking to protect the use of a trade name illegally used by the plaintiff. It seems to me that the filing of the certificate of discontinuance by the plaintiffs of the trade name " Universal Tours," with the statement in the certificate that their business would no longer be conducted under that name, left the field open for the use of that name by any other person wishing to adopt it, and, furthermore, I am of the opinion that the use of such trade name by the plaintiffs after such certificate was filed places the plaintiffs in such a position that equity should refuse to grant them relief. I, therefore, recommend that the judgment be reversed upon the law and the facts, with costs, and judgment directed in favor of the defendant upon the merits, with costs. Findings of fact numbered 9, 10, 11, 12 and 13, and conclusions of law numbered 1, 2 and 3, are reversed and new findings and conclusions will be made in support of the judgment directed in favor of the defendant.

SEEGER and SCUDDER, JJ., concur; HAGARTY, J., with whom RICH, J., concurs, dissents and writes for affirmance.

HAGARTY, J. (dissenting). I dissent. In my opinion, the fact that the plaintiffs' predecessors filed a certificate in 1924 stating

that they had discontinued the use of the words " Universal Tours " in their business as a trade name, does not deprive the plaintiffs of the benefits of the judgment which they obtained, upon sufficient evidence, enjoining the defendant from the use of the words " Universal Tours " as a trade name.

In October of 1915, at the time the plaintiffs' predecessors adopted the trade name " Universal Tours," a certificate was duly filed in the county clerk's office, in compliance with the provisions of section 440 of the Penal Law. The law, as it then existed, is set forth in full in the prevailing opinion. But in February of 1924 plaintiffs' predecessors filed the certificate which is referred to as the certificate of discontinuance, appearing in form also in the prevailing opinion. Thereafter, the plaintiffs continued the use of this trade name in their business, notwithstanding the filing of the certificate in February of 1924.

In my opinion, the filing of this certificate of discontinuance was an idle ceremony which in no wise affected the plaintiffs' rights to continue the use of the trade name. The original certificate of record continued to fulfill the purposes for which the statute was designed, that is, to give notice that the plaintiffs or their predecessors were doing business under the name " Universal Tours." The right to the use of this name was not enhanced by the filing of the certificate, but, the name having been adopted, the filing of the certificate was made mandatory in order that the public might know with whom it was dealing. Nor was the right to continue the use of the name taken away by the certificate of discontinuance, under the law as it then existed. Concededly, the plaintiffs continued the use of the name after February of 1924, and to the time of the trial. Can it be said that the plaintiffs were guilty of a misdemeanor by continuing the use of the name after February of 1924? I think not. They complied with the statute, and that compliance gave the required notice that they were the individuals doing business under the name " Universal Tours." Having filed the certificate, they were guilty of no offense in continuing the use of the name, in the absence of any provision of the law providing for the filing of a certificate to the effect that the use of such name had been discontinued. There was no authority in the county clerk to receive such a certificate, nor was there any provision for the making of a note of such certificate of discontinuance upon the index so kept by him of all persons having theretofore filed certificates. That the filing of the certificate of discontinuance was of no legal effect in 1924, is evidenced by the fact that the Legislature provided for such a certificate by chapter 202 of the Laws of 1926, in effect September 1, 1926.

The purpose of the law under consideration (Penal Law, § 440) is the same as that of former section 363-b of the Penal Code, considered in *Sinnott* v. *German-American Bank* (164 N. Y. 386), where Judge GRAY wrote (p. 391): " It is a highly penal one and deserves a strict construction. (*Gay* v. *Seibold*, 97 N. Y. 472.) It was a measure intended to be in the interests of the commercial community and had its foundation in public policy." Again, in *Jenner* v. *Shope* (205 N. Y. 66, at p. 72), it was stated for the court by CULLEN, Ch. J., referring to section 363-b of the Penal Code, from which the present law was derived, that " It was not the object of the legislation to prohibit absolutely the conduct of business under titles of the character mentioned — a practice which has been in use from very early times — but to require any one so conducting a business to file a certificate stating the name of the person or persons who were actually conducting the business in order that persons dealing with them might know who were responsible for liabilities incurred in the business."

In my opinion, the plaintiffs here come within the rule stated by Mr. Justice GIEGERICH in *Goddard* v. *American Peroxide & Chemical Co.* (67 Misc. 279), cited without disapproval in the prevailing opinion. It was there held that the plaintiff was entitled to equitable relief enjoining the defendant's wrongful use of the plaintiff's trade name, notwithstanding the fact that the plaintiff had not filed a certificate as required by section 440 of the Penal Law, for the reason that the plaintiff for a long time had no knowledge of the statute, and as soon as he became aware of its existence he filed the necessary certificate, which was prior to the commencement of the action. The good faith of the plaintiffs in the case now under consideration is evidenced by the fact that their predecessors complied with the law by filing the required certificate, which remains unaffected upon our public records to this day.

The judgment should be affirmed, with costs.

RICH, J., concurs.

Judgment reversed upon the law and the facts, with costs, and judgment directed in favor of defendant upon the merits, with costs. Findings of fact numbered 9, 10, 11, 12 and 13, and conclusions of law numbered 1, 2 and 3 are reversed and new findings and conclusions will be made in support of the judgment directed in favor of defendant.

Settle order on notice.